```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
UNITED STATES OF AMERICA ex rel            :
ATC DISTRIBUTION GROUP, INC.
                                            :       03 Civ. 2150 (GWG)
            Plaintiffs,
                                            :       OPINION AND ORDER
            -v.-
                                            :

READY-BUILT TRANSMISSIONS, INC.,           :
ROBERT L. JONES, SR. et al.,
            Defendants.                     :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

On March 27, 2003, ATC Distribution Group, Inc. ("ATC") filed this action on behalf of the United States pursuant to the False Claims Act, 31 U.S.C. §§ 3729 et seq. against defendants Ready-Built Transmissions, Inc., Robert L. Jones, Sr., and Robert L. Jones, Jr. After the United States intervened, the parties reached a settlement under which defendants were required to pay the Government $160,000. ATC has now made an application for attorney's fees.

I. APPLICABLE LEGAL PRINCIPLES

A prevailing party in an action under the False Claims Act is entitled to "receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d). The statute further provides that "[a]ll such expenses, fees, and costs shall be awarded against the defendant."

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley, 461 U.S. at 433; accord Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 114 (2d Cir. 2007); Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992),

cert. denied, 506 U.S. 1053 (1993). As a general rule, the amount of an attorney's fees award is within the discretion of the Court. See, e.g., Hensley v. Eckerhart, 461 U.S. 424, 433, 437 (1983); Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 145 (2d Cir. 1993), cert. denied, 510 U.S. 1164 (1994). "The initial burden of proof that the fee is reasonable falls on the relator, who must submit evidence regarding the number of hours expended and the hourly rate claimed." United States ex rel. Poulton v. Anesthesia Assocs., Inc., 87 F. Supp. 2d 351, 354 (D. Vt. 2000) (citing Hensley, 461 U.S. at 433); accord 601 W. Assocs. v. Kleiser-Walczak Constr. Co., 2004 WL 1117901, at *3 (S.D.N.Y. May 18, 2004).

## II. DISCUSSION

ATC's initial application to the court sought a total award of $140,134, including fees, expenses, and interest.[1] This amount consists of (1) $99,163 for work performed by outside firms who represented ATC during the case and (2) $40,971 for work performed by ATC's in-house counsel. See Sedory Aff. ¶¶ 5, 9.

The defendants filed papers opposing the motion.[2] ATC then filed additional papers seeking fees for the briefing on the fee application itself.[3] In the new fee application, ATC

---

[1] See Notice of Motion for Award of Legal Costs, filed May 26, 2006 (Docket #18); Relator's Memorandum of Law in Support of Motion for Award of Legal Costs, filed May 26, 2006 (Docket #19); Affidavit of Thomas I. Sheridan, III, Esq. in Support of Relator's Motion for Award of Legal Costs, filed May 26, 2006 (Docket #20) ("Sheridan Aff."); Affidavit of Richard T. Sedory Esq. in Support of Relator's Motion for Award of Legal Costs, filed May 26, 2006 (Docket #21) ("Sedory Aff"). The papers incorrectly total this number as $140,133. See Sedory Aff. ¶ 10.

[2] See Response to Motion for Award of Legal Costs, filed June 15, 2006 ("Def. Resp."); Memorandum Brief in Support of Response to Motion for Award of Legal Costs, filed June 15, 2006 ("Def. Mem.").

[3] See Relator's Reply Memorandum in Further Support of Motion for Award of Legal Costs, filed June 26, 2006 (Docket #25); Supplemental Affirmation of Richard T. Sedory Esq. in

sought an additional $21,691.26 for its outside counsel.  See Sedory Supp. ¶¶ 2, 5.  ATC stated that its in-house counsel expended an additional 32.5 hours, see id. ¶ 3, but did not compute the total amount sought with respect to such hours.  It did, however, request reimbursement for an additional $604.30 for interest and expenses, see id. ¶ 6.  Defendants opposed this request in a surreply.  See Surreply to Supplemental Affirmation of Richard T. Sedory, filed Apr. 9, 2007 (Docket #33) ("Def. Surreply").

      Eleven individuals at the law firms of Torys LLP and Hanly Conroy Bierstein Sheridan Fisher & Hayes LLP performed work on ATC's case.  The following chart, which includes the supplemental request, indicates each individual's name, title, last date working on the ATC case, total hours at each billing rate, the rate charged, and the total amount billed at that rate:

---

Further Support of Relator's Motion for Award of Legal Costs, filed June 26, 2006 (Docket #26) ("Sedory Supp.").

| Name | Title | Last Billing Date | Hours | Rate | Amount |
|---|---|---|---|---|---|
| Thomas I. Sheridan | Partner | 12/31/2005 | 49.5 | $495 | $24,502.50 |
| | | 5/31/2006 | 35 | $525 | $18,375.00 |
| Nicomedes Sy Herrera | Associate | 9/29/2003 | 48.2 | $325 | $15,665.00 |
| | | 5/31/2006 | 49.3 | $370 | $18,241.00 |
| Zachary D. Silbersher | Associate | 7/17/2003 | 54.8 | $210 | $11,508.00 |
| | | 4/14/2004 | 12 | $255 | $3,060.00 |
| Michael B. Hofffman | Paralegal | 12/20/2002 | 1 | $205 | $205.00 |
| Zachary Cohen | Paralegal | 7/17/2003 | 5.8 | $120 | $696.00 |
| Michael Buchwald | Paralegal | 4/14/2003 | 1.5 | $120 | $180.00 |
| Darrell Williams | Paralegal | 7/17/2003 | 4.8 | $120 | $576.00 |
| | | 2/18/2004 | 0.4 | $130 | $52.00 |
| Julio A. Lucena | Paralegal | 3/24/2004 | 4.6 | $45 | $207.00 |
| Christine C. Reynaert | Summer Associate | 7/17/2003 | 11.8 | $185 | $2,183.00 |
| Julio A. Lucena | Administration | 11/13/2003 | 4.4 | $45 | $198.00 |
| Doning Barber | (untitled) | 10/31/2005 | 0.9 | $100 | $90.00 |
| | | 5/31/2006 | 8.55 | $110 | $940.50 |
| Melissa C. Welch | (untitled) | 3/31/2006 | 19.4 | $300 | $5,820.00 |
| | | | 311.95 | | $102,499.00 |

See Ex. 1 to Sedory Aff. (totals created by the Court); Sheridan Aff.; Sedory Supp. The total amount in the table above does not include any expenses or interest.

In addition, ATC's in-house counsel, Richard T. Sedory, and its Coordinator of Litigation, Mark Fiedler, performed work towards the case, for which they initially applied for attorney's fees at the following rates:

| Name | Hours | Rate | Total |
|---|---|---|---|
| Mark Fiedler | 248 | $82.00 | $20,336.00 |
| Richard T. Sedory | 46.45 | $185.00 | $8,593.25 |
| | 294.45 | | $28,929.25 |

See Sedory Aff ¶ 9, Ex. 6. ATC later applied for an additional reimbursement for 32.5 hours of Sedory's time, but did not specify a billing rate or total fee sought for those hours, see Sedory Supp. ¶¶ 3, 6.

The defendants make a number of arguments in response to the application. The Court has considered all their arguments and addresses the most salient ones below.

4

    A.  <u>In-House Employees</u>

The defendants "contend[] that no fees or expenses should be awarded" for time spent by the in-house counsel and a "litigation manager" (apparently performing paralegal duties) because they "were performing tasks in connection with their ususal and ordinary duties," and "would have been paid whether they were working on this matter or any other matter." Def. Mem. at 3.[4] The Court rejects this argument as "[i]t is well-settled that attorneys' fees and costs should be awarded for litigation performed by in-house counsel if such fees would be awarded for the same work performed by outside counsel." <u>Video-Cinema Films, Inc. v. Cable News Network, Inc.</u>, 2004 WL 213032, at *6 (S.D.N.Y. Feb. 3, 2004) (citing <u>Blum v. Stenson</u>, 465 U.S. 886 (1984)); <u>accord</u> <u>Holmes v. NBC/GE</u>, 168 F.R.D. 481, 482 n.3 (S.D.N.Y. 1996) (citing cases).

ATC's application for the fees of its in-house counsel and paralegal suffers from a different defect, however. In <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136 (2d Cir. 1983), the Second Circuit held that a party seeking an award of attorney's fees must support the request with contemporaneous time records that show "for each attorney, the date, the hours expended, and the nature of the work done." <u>Id.</u> at 1148; <u>accord</u> <u>Kirsch v. Fleet Street, Ltd.</u>, 148 F.3d 149, 173 (2d Cir. 1998); <u>Lewis v. Coughlin</u>, 801 F.2d 570, 577 (2d Cir. 1986); <u>see also</u> <u>Cruz v. Local Union No. 3, IBEW</u>, 34 F.3d 1148, 1160-61 (2d Cir. 1994) (accepting an application derived from contemporaneous records). "Attorney's fee applications that do not contain such supporting data 'should normally be disallowed.'" <u>Barrera v. Brooklyn Music, Ltd.</u>, 346 F. Supp.2d 400, 412 (S.D.N.Y. 2004) (citing <u>New York State Ass'n for</u>

---

[4] The defendants do not supply page numbers for their memorandum of law. The Court has added numbering, beginning with the first page after the title page.

Retarded Children, Inc., 711 F.2d at 1154).  Here, the records for the two in-house employees list only the two individuals, the month in which they performed work, and the number of hours worked for that month.  See Ex. 6 to Sedory Aff.  In other words, ATC has not provided a description of the nature of the work performed by each individual by date.  It is thus impossible for the Court to determine whether their hours were reasonably expended.  Because the application respect to the fees sought by these two in-house employees – both in the initial application and the supplemental application – does not conform to well-established law in this Circuit, it is denied.

      B.  Reasonableness of Rates

The fee applicant bears the burden of establishing the reasonableness of the hourly rates requested – specifically, by producing satisfactory evidence that the requested rates are in line with those prevailing in the community.  Blum, 465 U.S. at 895 n.11.  To support the claimed rates, ATC has submitted affidavits from attorneys indicating that the rates charged are in line with those prevailing in the community.  See Sedory Supp. ¶ 7; Sheridan Aff. ¶ 5.  In addition, the rates are at a discount from the normal rate of the attorneys involved based on a negotiated discount.  See Sheridan Aff. ¶ 5.

Strangely, ATC has not submitted information regarding the qualifications of the attorneys involved.  Where the moving party fails to "disclose any information regarding the professionals performing those services . . . , including whether they are attorneys or paralegals, partners or associates, . . . [and] their relative experience levels," courts have denied applications for attorney's fees.  See Disney Enters., Inc. v. Merchant, 2007 WL 1101110, at *8 (N.D.N.Y. Apr. 10, 2007) (collecting cases).  Nonetheless, the Court retains discretion not to do so if the

6

information can be obtained from other sources.  See id.  Thus, "[i]n order to permit the entry of a final judgment without the requirement of further submissions," the Court will instead use "the information which plaintiffs should have supplied in the first instance from publicly available sources."  Id.  From such sources (principally the websites of the firms involved), the Court has been able to determine that Sheridan has almost 30 years of experience; Herrera has almost ten years of experience; Silbersher has almost five years of experience; and Welch has almost five years of experience.  Hoffman, Cohen, Buchwald, Williams, and Lucena are identified as paralegals.  Reynaert is identified as a summer associate.  Because the Court is unable to locate any information regarding Doning Barber, no fees will be awarded for Barber's time, resulting in a $1,030.50 reduction from the total award.  Cf. id. at *8 n.7 (where no information located about two individuals, their fees were disallowed).

While defendants have criticized the strength of ATC's evidence regarding the claimed rates, they have not argued that any different rate should be set for any of the individuals involved.  Accordingly, we will accept the rates claimed – particularly since these rates are in line with those prevailing at the type of firms with which the attorneys were associated and since the fees were actually paid by the client at a time when it was far from certain that there would be any reimbursement.  See, e.g., Getaped.com, Inc. v. Cangemi, 188 F. Supp. 2d 398, 407 (S.D.N.Y. 2002) ("In this case, the market of willing seller (i.e., provider of legal services) and willing buyer (i.e., the client) is a sufficient test of reasonableness: the requested fee award does not seem out of proportion to the skill and work required and is a relatively small amount compared to modern litigation costs, even in copyright cases.") (citing Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc., 166 F.3d 65, 74 (2d Cir. 1999)); see also Arbor Hill Concerned

Citizens Neighborhood Ass'n, 493 F.3d at 117 ("[t]he reasonable hourly rate is the rate a paying client would be willing to pay.").

     C.  Incorrect Billing

Defendants note that ATC has billed for "3.5 hours totaling $1,682.00 for work regarding 'Delta' and Conroy Appeal," which are not names associated with this suit. Def. Resp. at 5-6; see Bill, dated Nov. 30, 2004 (within Ex. 1 to Sedory Aff.). ATC does not respond. Accordingly, the Court eliminates the hours for the attorneys relating to this bill (less time already eliminated for Barber).

Another bill entry reflects an expense for 'co-counsel' fees. As defendants note, "[t]here is no reference . . . regarding what this means, who it is or what services were performed." Def. Resp. at 6. ATC has not responded to this point. Therefore, $187.50 will be eliminated from the bill dated May 16, 2003.

Finally, on April 20, 2006, Herrera billed 1.5 hours to "[d]raft and revise demand letter to J. McCorkle; conferences with T. Sheridan concerning same." See Bill, dated May 11, 2006 (within Ex. 1 to Sedory Supp.). The defendants contend that "Mr. McCorkle had nothing to do with this litigation and . . . is a litigant in separate litigation involving ATC in Lauderdale County, Alabama." Def. Surreply at 3. Given that the Court has seen no other reference to a McCorkle, the Court will eliminate this time.

     D.  Claims of Excessive Billing

         1.  Governing Law

In determining the reasonable number of hours to be compensated, the Court's task is to make "a conscientious and detailed inquiry into the validity of the representations that a certain

8

number of hours were usefully and reasonably expended." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). The critical inquiry is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant, 973 F.2d at 99; accord Nike, Inc. v. Top Brand Co., 2006 WL 2946472, at *5 (S.D.N.Y. Feb. 27, 2006), adopted by, 2006 WL 2884437 (S.D.N.Y. Oct. 6, 2006). A court must exclude hours that are "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434; accord Quaratino v. Tiffany & Co., 166 F.3d 422, 426 n.6 (2d Cir. 1999); Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998); Luciano v. Olsten Corp., 109 F.3d 111, 116-17 (2d Cir. 1997); In re Stock Exch. Options Trading Antitrust Litig., 2006 WL 3498590, at *11 (S.D.N.Y. Dec. 4, 2006). In addition, in cases where the documentation of hours is "vague or incomplete," the court may also reduce the award. E.g., Rosso v. Pi Mgmt. Assocs., L.L.C., 2006 WL 1227671, at *2 (S.D.N.Y. May 3, 2006) (citing In re Painewebber Ltd. P'ships Litig., 2003 WL 21787410, at *4 (S.D.N.Y. Aug. 4, 2003)).

    2.  Discussion

  The Court rejects the objections raised by defendants to the hours sought with respect to the initial fee application. Thus, it is not unreasonable per se for more than one lawyer to work on a task. See, e.g., Etna Prods. Co., Inc. v. Q Mktg. Group, Ltd., 2005 WL 2254465, at *3 (S.D.N.Y. June 6, 2005); accord Raniola v. Bratton, 2003 WL 1907865, at *5 (S.D.N.Y. Apr. 21, 2003) ("Necessarily, as tasks in a complex case are divided or shared, the lawyers are required to consult, and in this case that reasonably led to a substantial amount of time spent in conference.") (citing Bridges v. Eastman Kodak Co., 1996 WL 47304, at *6 (S.D.N.Y. Feb. 6, 1996)). "Indeed, the use of two attorneys may actually have increased the efficiency of the

litigation." Pro-Choice Network v. Project Rescue, 848 F. Supp. 400, 405 (W.D.N.Y. 1994). Nor is it unreasonable for lawyers to consult with each other. See, e.g., Harrington Haley LLP v. Nutmeg Ins. Co., 39 F. Supp. 2d 403, 411-12 (S.D.N.Y. 1999).

Also, a fee applicant may seek fees for a summer associate if the summer associate has performed legal work on the case. See, e.g., Wells Fargo Bank v. BrooksAmerica Mortgage Corp., 2004 WL 2754855, at *2 (S.D.N.Y. Dec. 1, 2004); Weil v. Long Island Sav. Bank, FSB, 188 F. Supp. 2d 265, 269 (E.D.N.Y. 2002); Garcia v. Bowen, 702 F. Supp. 409, 411 (S.D.N.Y. 1988). Here the summer associate was assigned a "research assignment on original source rule in preparation for meeting with U.S. Attorneys' office" on June 4, 2003. See Bill, dated July 17, 2003 (within Ex. 1 to Sedory Aff.).

The defendants argue that ATC should not have been charged for meals. An award of attorney's fees, however, should "'include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (quoting US. Football League v. Nat'l Football League, 887 F.2d 408, 416 (2d Cir. 1989)); accord id., 143 F.3d at 763 (citing Kuzma v. IRS, 821 F.2d 930, 933-34 (2d Cir. 1987)). Many firms charge clients for meals when work is performed after normal business hours. While the time records do not record the time the meals were consumed, given that there were only six of them in a three year period, the charge of $69.38 for these six meals is reasonable.

The defendants also point out that the expenses for "Computerized Legal Research" do not necessarily correspond to the months in which the research was performed. See Def. Resp.

at 6. But there is no reason why bills from a legal research service would arrive at the same time the legal research is performed.

As for the number of hours expended, defendants correctly note that "the services rendered do not include any work relating to discovery, extensive motion practice, court appearances, briefs, etc." Def. Resp. at 4. Until the fee application, ATC only researched and filed a complaint and gave assistance to the Government in its prosecution. Nonetheless, it is to be expected that these tasks may have required significant factual and legal investigation. Defendants complain that during the period prior to the filing of the complaint in March 2003 "some 95.9 hours were billed." Id. at 6. While the Court has calculated a total of 107.2 hours for this period, the Court cannot say that this was an unreasonable amount of time spent in conducting factual research, legal research, and drafting and filing a complaint. The Court has considered the other examples offered by defendants but none of these reflect the excessive expenditure of time. Accordingly, the Court will not make any further reductions in the number of hours sought in the initial fee application.

E.   Objections to Supplemental Fee Application

To the extent that the defendants object to reimbursing fees expended in preparing the application for fees itself, the Court rejects this objection. As has been explained in the context of a Civil Rights Act suit,

> Where a prevailing party is entitled to attorneys' fees under [42 U.S.C.] § 1988, litigation is necessary to show that the fees requested are reasonable. Failure to compensate for time spent on that litigation would effectively lower the overall value of the award granted. Such a result would conflict with the congressional policy of encouraging competent attorneys to represent clients in civil rights cases.

Williamsburg Fair Hous. Comm. v. Ross-Rodney Hous. Corp, 599 F. Supp. 509, 521 (S.D.N.Y. 1984); accord Wilder v. Bernstein, 975 F. Supp. 276, 283 (S.D.N.Y. 1997) ("It is well settled that prevailing parties are entitled to reimbursement for the time spent by their attorneys in preparing fee applications."); U.S. Football League v. Nat'l Football League, 704 F. Supp. 474, 486 (S.D.N.Y. 1989) (an argument that the plaintiff "is not entitled to fees incurred in preparing this petition" is "contrary to settled law in this Circuit."), aff'd, 887 F.2d 408 (2d Cir. 1989), cert. denied, 493 U.S. 1071 (1990). The same principle applies in False Claims Act cases and thus "time expended by attorneys seeking an award of fees (sometimes called 'fees on fees')" in False Claims Act cases "justifiably may be included in the application and the award." U.S. ex rel. John Doe I, 54 F. Supp. 2d at 414, 420.

With respect to the other objections made to the supplemental fee application, the Court agrees that the number of hours billed for the fee application is large in comparison with the actual product. Some entries by themselves suggest the possibility of unnecessary expenditures of time. For example, on April 17 and 18, 2006, Herrera billed 9 hours for meeting with Sheridan and for analyzing the motion. See Bill, dated May 1, 2006 (within Ex. 1 to Sedory Supp.). At the same time, Sheridan billed 1.8 hours for meeting with Herrera and analyzing the motion. See id.

More fundamentally, however, the fee application here was not complex. The memorandum of law included with the initial application was only six pages long. The reply brief was only ten pages long. While there were additional supporting documents prepared, the number of hours billed – 54.25 hours – is too much.

The Second Circuit has stated that a district court is not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items." Lunday, 42 F.3d at 134.  Rather, because "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application," a court may apply an across-the-board percentage cut "as a practical means of trimming fat from a fee application." Carey, 711 F.2d at 1146; accord McDonald ex rel Prendergast v. Pension Plan, 450 F.3d 91, 96 (2d Cir. 2006).  "Particularly where the billing records are voluminous, it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent." Alveranga v. Winston, 2007 WL 595069, at *5 (E.D.N.Y. Feb. 22, 2007) (internal quotations and citations omitted).

Thus, a court retains power to "exclude excessive and unreasonable hours from its fee computation by making an across-the-board reduction in the amount of hours," Saunders v. Salvation Army, 2007 WL 927529, at *3 (S.D.N.Y. Mar. 27, 2007), and many courts have engaged in such percentage reductions.  See, e.g., Alveranga, 2007 WL 595069, at *6 (40%); Sec. Exch. Comm'n v. Goren, 272 F. Supp. 2d 202, 213 (E.D.N.Y. 2003) (30%); Elliot v. Bd. of Educ., 295 F. Supp. 2d 282, 286 (W.D.N.Y. 2003) (10%); Rotella v. Bd. of Educ., 2002 WL 59106, at *4 (E.D.N.Y. Jan. 17, 2002) (20% - 30%).

In light of all the factors discussed above, the Court will trim the request for fees during the period the fee application was prepared (April 2006 to May 2006) by 33% – that is, by approximately 18 hours.

D. Interest

ATC seeks interest on the attorney's fee award. The Court notes that in the case of attorney's fees that were not previously paid by a client – the typical situation in civil rights cases – parties are compensated at current attorney hourly rates to take into account the loss in value of money between the time the attorney's work was expended and the time the fees are awarded. See, e.g., Missouri v. Jenkins, 491 U.S. 274, 282 (1989) (where litigation spans a number of years, the reasonable hourly rate should be adjusted to account for "the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value") (internal quotation marks and citation omitted); accord Raniola, 2003 WL 1907865, at *6. The False Claims Act is clear that "all" expenses and fees are to "be awarded against the defendant." 31 U.S.C. § 3730(d). The loss of the use of money following the payment of attorney's fees is an expense of the litigation and thus should be borne by the defendants, not ATC. See, e.g., Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co., 137 F. Supp. 2d 351, 361 (S.D.N.Y. 2001) (to compensate for loss of use of money in situation where attorney's bills were paid, "the appropriate adjustment is an award of interest rather than a recalculation of the fees at current rates"), vacated on other grounds, 302 F.3d 18, 34-35 (2d Cir. 2002); accord Network Publ'g Corp. v. Shapiro, 1991 WL 220959, at *4 (S.D.N.Y. Oct. 15, 1991); Warner Bros., Inc. v. Gay Toys, Inc., 598 F. Supp. 424, 433 (S.D.N.Y. 1984); but see Campaign for a Progressive Bronx v. Black, 631 F. Supp. 975, 983 (S.D.N.Y. 1986) (denying pre-judgment interest under 42 U.S.C. § 1973*l*(e)). Accordingly, the Court will award such interest and will have it run from the date the attorney's invoices were paid. See, e.g, Harris Trust & Sav. Bank, 137 F. Supp. 2d at 361 (ERISA suit, awarding pre-judgment interest on

14

attorney's fees already paid "running from December 31 of the year the invoice was issued and paid"); Barcia v. Sitkin, 1997 WL 66785, at *4 (S.D.N.Y. Feb. 14, 1997) (awarding pre-judgment interest under 42 U.S.C. § 1988 to run from "thirty days from the date of each retroactive monthly billing"). As for the rate of interest that defendants should pay, one court has held that "[t]he rate set by 28 U.S.C. § 1961, governing the award of post-judgment interest, is also appropriate for prejudgment interest." Barcia, 1997 WL 66785, at *4. We concur.

E. Computation

As discussed above, the Court has reduced the number of hours that will be reimbursed to ATC for attorney's fees by the following amounts:

\*   The bill dated August, 19, 2003 for 1 hour of Sheridan's time on July 16, 2003[5]
\*   All of the in-house employees' time
\*   All of Barber's time
\*   The bill dated November 30, 2004 (less hours already eliminated for Barber's time)
\*   1.5 hours of Herrera's time on April 20, 2006
\*   33% of the supplemental application (less the time already eliminated for Barber and 1.5 hours already eliminated from Herrera's time)

---

[5] This hour is eliminated because ATC's application itself appears to eliminate it. ATC's summary of the fees it seeks provides an entry for August 2003 as $302.74. See Ex. 4 to Sedory Aff. While a bill dated September 29, 2003 totals $302.74, see Ex. 1 to Sedory Aff., a bill dated August 19, 2003 totals $495, see id., and is apparently not included on ATC's chart. Thus, it appears that ATC has eliminated one hour of Thomas I. Sheridan's time on July 16, 2003. Since ATC does not request reimbursement for that hour, the Court eliminates it as well.

Given the figures subtracted above, the total hours to be awarded are as follows:

| Name | Title | Last Billing Date | Hours | Rate | Amount |
|---|---|---|---|---|---|
| Thomas I. Sheridan | Partner | 12/31/2005 | 44.1 | $495 | $21,829.50 |
|  |  | 5/31/2006 | 29.0 | $525 | $15,239.18 |
| Nicomedes Sy Herrera | Associate | 9/29/2003 | 48.2 | $325 | $15,665.00 |
|  |  | 5/31/2006 | 38.8 | $370 | $14,340.46 |
| Zachary D. Silbersher | Associate | 7/17/2003 | 54.8 | $210 | $11,508.00 |
|  |  | 4/14/2004 | 12.0 | $255 | $3,060.00 |
| Michael B. Hofffman | Paralegal | 12/20/2002 | 1.0 | $205 | $205.00 |
| Zachary Cohen | Paralegal | 7/17/2003 | 5.8 | $120 | $696.00 |
| Michael Buchwald | Paralegal | 4/14/2003 | 1.5 | $120 | $180.00 |
| Darrell Williams | Paralegal | 7/17/2003 | 4.8 | $120 | $576.00 |
|  |  | 2/18/2004 | 0.4 | $130 | $52.00 |
| Julio A. Lucena | Paralegal | 3/24/2004 | 4.6 | $45 | $207.00 |
| Christine C. Reynaert | Summer Associate | 7/17/2003 | 11.8 | $185 | $2,183.00 |
| Julio A. Lucena | Administration | 11/13/2003 | 4.4 | $45 | $198.00 |
| Doning Barber | (untitled) | 10/31/2005 | 0 | $100 | $0.00 |
|  |  | 5/31/2006 | 0 | $110 | $0.00 |
| Melissa C. Welch | (untitled) | 3/31/2006 | 19.4 | $300 | $5,820.00 |
|  |  |  | 280.585 |  | $91,759.14 |

With respect to expenses, the Court has reduced the reimbursement to ATC of expenses by the following amounts:

\*       $9.45 in expenses contained in the bill dated November 30, 2004
\*       $187.50 in "co-counsel" expenses

Thus, expenses are reduced by $196.95, from $6,064.84 to $5,867.89. The total of fees and expenses, therefore, is $97,627.03.

It is now necessary to award pre-judgment interest. As discussed, we have chosen to use 28 U.S.C. § 1961(a), which calculates interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a).

We have examined the bills involved and, based on the hours allowed, have calculated interest until the date of this Order (September 7, 2007) as follows:

| Date Billed | Date Paid [6] | Amount [7] | Interest Rate [8] | Interest Total [9] | Total |
|---|---|---|---|---|---|
| 12/20/2002 | 2/6/2003 | $7,211.50 | 1.16 | $391.72 | $7,603.22 |
| 12/27/2002 | 2/21/2003 | $4,320.00 | 1.16 | $232.50 | $4,552.50 |
| 1/13/2003 | 3/27/2003 | $723.34 | 1.25 | $41.13 | $764.47 |
| 3/19/2003 | 6/19/2003 | $1,729.85 | 1.08 | $80.26 | $1,810.11 |
| 4/14/2003 | 7/17/2003 | $15,663.00 | 1.29 | $854.70 | $16,517.70 |
| 5/16/2003 | 9/25/2003 | $3,354.27 | 1.22 | $164.72 | $3,518.99 |
| 6/19/2003 | 10/28/2003 | $2,667.66 | 1.31 | $137.55 | $2,805.21 |
| 7/17/2003 | 11/26/2003 | $9,589.30 | 1.24 | $457.71 | $10,047.01 |
| 8/19/2003 |  | $0.00 | 1.24 | $0.00 | $0.00 |
| 9/29/2003 | 12/29/2003 | $302.74 | 1.24 | $14.10 | $316.84 |
| 10/24/2003 | 12/29/2003 | $2,062.66 | 1.24 | $96.05 | $2,158.71 |
| 11/13/2003 | 12/29/2003 | $1,420.50 | 1.24 | $66.15 | $1,486.65 |
| 12/18/2003 | 1/27/2004 | $1,431.18 | 1.24 | $65.18 | $1,496.36 |
| 2/18/2004 | 3/26/2004 | $6,610.37 | 1.32 | $306.12 | $6,916.49 |
| 3/24/2004 | 4/16/2004 | $5,624.53 | 2.22 | $435.24 | $6,059.77 |
| 4/14/2004 | 4/29/2004 | $326.04 | 2.04 | $22.88 | $348.92 |
| 6/30/2004 | 7/29/2004 | $1,435.50 | 2.14 | $97.70 | $1,533.20 |
| 7/31/2004 | 9/2/2004 | $100.19 | 2.27 | $7.01 | $107.20 |
| 11/30/2004 |  | $0.00 | 3.13 | $0.00 | $0.00 |
| 4/30/2005 | 6/30/2005 | $1,188.00 | 3.77 | $100.24 | $1,288.24 |
| 6/30/2005 | 10/26/2005 | $495.00 | 3.88 | $36.43 | $531.43 |
| 7/31/2005 | 9/21/2005 | $990.00 | 4.26 | $84.42 | $1,074.42 |
| 8/31/2005 | 11/3/2005 | $99.00 | 4.3 | $7.99 | $106.99 |
| 10/31/2005 | 12/20/2005 | $643.50 | 4.5 | $50.46 | $693.96 |
| 11/30/2005 | 2/2/2006 | $445.50 | 4.72 | $34.00 | $479.50 |
| 12/31/2005 | 3/16/2006 | $643.50 | 4.82 | $46.41 | $689.91 |
| 1/31/2006 | 4/20/2006 | $892.50 | 4.94 | $61.57 | $954.07 |
| 2/28/2006 | 4/20/2006 | $2,677.50 | 4.99 | $186.61 | $2,864.11 |
| 3/31/2006 | 6/29/2006 | $11,122.50 | 5.24 | $698.03 | $11,820.53 |
| 4/30/2006 | 7/29/2006 | $6,294.56 | 5.17 | $362.10 | $6,656.66 |
| 5/31/2006 | 8/29/2006 | $7,562.84 | 5.07 | $393.13 | $7,955.97 |
| **Total** |  | $97,627.03 |  | $5,531.58 | $103,159.15 |

---

[6] ATC provided the dates its bills were paid, see Ex. 4 to Sedory Aff, with the exception of the paid date for the September 29, 2003 bill, which the Court assumes was paid at the same time as the October 24, 2003 bill, and the paid dates for the April 30, 2006 and May 31, 2006 bills, which the Court assumes were 90 days later.

[7] The amounts reflect subtractions for the hours and expenses previously discussed.

[8] The interest rates used are the weekly average 1-year constant maturity Treasury yields for the calendar week preceding the date of each bill. See 28 U.S.C. § 1961(a); http://www.federalreserve.gov/releases/h15.

[9] Interest has been computed daily and compounded annually. See 28 U.S.C. § 1961(b).

<u>Conclusion</u>

Plaintiff is awarded the sum of $103,159.15 in attorney's fees, expenses and pre-judgment interest to September 7, 2007, pursuant to 31 U.S.C. § 3730(d).  The Clerk is requested to enter judgment against defendants for this amount.

Dated: September 7, 2007
  New York, New York

_____<br>
GABRIEL W. GORENSTEIN<br>
United States Magistrate Judge

Copies sent to:

Thomas I. Sheridan, III, Esq.
Hanly Conroy Bierstein Sheridan Fisher & Hayes, LLP
112 Madison Avenue
New York, NY 10016

James A. Ward, Esq.
Ward & Wilson, L.L.C.
2100 Southbridge Parkway, Suite 580
Birmingham, AL  35209

Conclusion

Plaintiff is awarded the sum of $103,159.15 in attorney's fees, expenses and pre-judgment interest to September 7, 2007, pursuant to 31 U.S.C. § 3730(d).  The Clerk is requested to enter judgment against defendants for this amount.

Dated: September 7, 2007
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Thomas I. Sheridan, III, Esq.
Hanly Conroy Bierstein Sheridan Fisher & Hayes, LLP
112 Madison Avenue
New York, NY 10016

James A. Ward, Esq.
Ward & Wilson, L.L.C.
2100 Southbridge Parkway, Suite 580
Birmingham, AL  35209